Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
[Additional Captions on Signature Page]
*Attorney for Plaintiff Joanne Copp*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE COPP, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ARMO BIOSCIENCES, INC., PETER VAN VLASSELAER, PH.D., XIANGMIN CUI, PH.D., CARL GORDON, PH.D., PIERRE LEGAULT, NAIYER RIZVI, M.D., BETH SEIDENBERG, M.D., and STELLA XU, PH.D.,<br><br>Defendants. | Case No.: 3:18-cv-3109<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Joanne Copp ("Plaintiff"), on behalf of herself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934. In support of this Class Action Complaint, Plaintiff, by her attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

Plaintiff brings this action on behalf of himself and the public stockholders of ARMO BioSciences, Inc. ("ARMO" or the "Company") against the Company and ARMO's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), §§ 78n(d)(4), 78n(e) and 78t(a) respectively, and U.S. Securities and Exchange Commission (the "SEC") Rule 14d-9 (17 C.F.R. § 240.14d-9) and SEC Regulation G, 17 C.F.R. 244.100 in connection with the proposed merger between ARMO and Eli Lilly and Company ("Lilly").

1. On May 10, 2018, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement") with Lilly, by which Lilly will acquire all of the outstanding shares of ARMO common stock through an all-cash tender offer at a purchase price of $50 per share (the "Tender Offer").

2. The Tender Offer commenced on May 23, 2018, and the Company concurrently filed a Recommendation Statement on Schedule 14D-9 (the "14D-9") with the SEC, recommending that the Company's stockholders tender their shares for the Tender Offer price. The Tender Offer is set to expire on June 21, 2018.

3. Plaintiff alleges that the 14D-9 is materially false and/or misleading because, *inter alia*, it fails to disclose certain material internal financial information about the Company, relied on by the Individual Defendants to recommend the Tender Offer and by the Company's financial advisor, Centerview Partners LLC ("Centerview") to render an opinion that the Tender Offer is

1

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

fair to ARMO stockholders, and certain material information regarding the sale process leading up to the Tender Offer, which omissions render the 14D-9 incomplete and/or misleading.

4. In particular, the 14D-9 omits material information regarding: (i) certain of the Company's financial projections and generally accepted accounting principles ("GAAP") reconciliation of those projections; (ii) the valuation analyses performed by Centerview in support of its fairness opinion; and (iii) certain information regarding the background of the transaction. These omissions render the 14D-9 materially misleading, including the basis for the Board's recommendation that shareholders tender their shares and the non-GAAP financial disclosures that were relied on and utilized by the Board and Centerview to recommend the Proposed Transaction.

5. The failure to adequately disclose such material information constitutes a violation of §§ 14(e), 14(d)(4), and 20(a) of the Exchange Act, among other reasons, because ARMO stockholders are entitled to such information in order to make a fully-informed decision regarding whether to tender their shares in connection with the Tender Offer.

6. For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Tender Offer or, in the event the Tender Offer is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under §§ 14(e), 14(d)(4), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this

2

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because ARMO is headquartered in this District.

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of ARMO common stock.

11. Defendant ARMO is a Delaware corporation with its principal executive offices located at 575 Chesapeake Drive, Redwood City, California 94063. ARMO's common stock trades on the NASDAQ GS under the ticker symbol "ARMO".

12. Individual Defendant Peter Van Vlasselaer, Ph.D. has served as a President, Chief Executive Officer, and director of the Company since 2012.

13. Individual Defendant Xiangmin Cui, Ph.D. has served as a director of the Company since August 2017.

14. Individual Defendant Carl Gordon, Ph.D. has served as a director of the Company since 2012.

15. Individual Defendant Pierre Legault has served as a director of the Company since April 2017.

16. Individual Defendant Naiyer Rizvi, M.D. has served as a director of the Company since June 2017.

17. Individual Defendant Beth Seidenberg, M.D. has served as a director of the Company since 2012.

18. Individual Defendant Stella Xu, Ph.D. has served as a director of the Company since August 2017.

19. The Individual Defendants referred to in paragraphs 12-18 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

3

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**CLASS ACTION ALLEGATIONS**

20. Plaintiff brings this action individually and as a class action on behalf of all holders of ARMO stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

21. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

22. The Class is so numerous that joinder of all members is impracticable. According to the 14D-9, as of May 21, 2018, there were 30,405,109 shares issued and outstanding. On information and belief, these shares are held by thousands of beneficial holders who are geographically dispersed across the country.

23. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

   a. whether Defendants have violated Sections 14 and 20 of the Exchange Act, and SEC regulations promulgated thereunder, in connection with the Tender Offer; and

   b. whether Plaintiff and the other members of the Class would be irreparably harmed and/or otherwise damaged were the transaction complained of herein consummated.

24. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

25. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

27. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

29. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will suffer absent judicial intervention and, in the absence of injunctive relief, seeks to pursue a claim for damages.

## SUBSTANTIVE ALLEGATIONS

### I. Background and the Tender Offer

30. ARMO is a bio-technology company that develops immunotherapies for treating cancer, as well as cardiovascular, fibrosis, and inflammation diseases in the United States.

31. On May 10, 2018, ARMO and Lilly issued a joint press release announcing the Tender Offer which stated the following, in relevant part:

> INDIANAPOLIS, IN and REDWOOD CITY, CA – Eli Lilly and Company (NYSE: LLY) and ARMO BioSciences, Inc. (NASDAQ: ARMO) today announced a definitive agreement for Lilly to acquire ARMO for $50 per share, or approximately $1.6 billion, in an all-cash transaction. ARMO BioSciences is a late-stage immuno-oncology company that is developing a pipeline of novel, proprietary product candidates designed to activate the immune system of cancer patients to recognize and eradicate tumors.
>
> The acquisition will bolster Lilly's immuno-oncology program through the addition of ARMO's lead product candidate, pegilodecakin, a PEGylated IL-10 which has demonstrated clinical benefit as a single agent, and in combination with both chemotherapy and checkpoint inhibitor therapy, across several tumor types. Pegilodecakin is currently being studied in a Phase 3 clinical trial in pancreatic cancer, as well as earlier-Phase trials in lung and renal cell cancer, melanoma and

5

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

other solid tumor types. ARMO also has a number of other immuno-oncology product candidates in various stages of pre-clinical development.

"At Lilly Oncology, we are dedicated to developing cancer medicines that will make a meaningful difference for patients," said Sue Mahony, Ph.D., Lilly senior vice president and president of Lilly Oncology. "The acquisition of ARMO BioSciences adds a promising next generation clinical immunotherapy asset to Lilly's portfolio of innovative oncology medicines."

"As we develop our immuno-oncology portfolio, Lilly will pursue medicines that use the body's immune system in new ways to treat cancer," added Levi Garraway, M.D., Ph.D., senior vice president, global development and medical affairs, Lilly Oncology, "We believe that pegilodecakin has a unique immunologic mechanism of action that could eventually allow physicians to offer new hope for many cancer patients."

"ARMO is proud of the work we have done to advance the study of immunotherapies and of the development of pegilodecakin to-date," said Peter Van Vlasselaer, Ph.D., President and Chief Executive Officer of ARMO BioSciences. "Given the resources that Lilly, a leader in oncology R&D, can bring to bear to maximize the value of pegilodecakin and the rest of the ARMO pipeline, we believe it is in the best interest of ARMO, our stockholders and the patients we serve, to execute this transaction."

Under the terms of the agreement, Lilly will promptly commence a tender offer to acquire all shares of ARMO BioSciences for a purchase price of $50 per share in cash, or approximately $1.6 billion. The transaction is expected to close by the end of the second quarter of 2018, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of ARMO's common stock. Very shortly after the closing of the tender offer, Lilly will acquire any shares of ARMO that are not tendered into the tender offer through a second-step merger at the tender offer price.

This transaction will be reflected in Lilly's reported results and financial guidance according to Generally Accepted Accounting Principles (GAAP), and is subject to customary closing conditions. There will be no change to Lilly's 2018 non-GAAP earnings per share guidance as a result of this transaction.

32.     The Tender Offer appears inadequate as the Merger Consideration represents *a 13% discount* to the Company's pre-merger announcement 52-week high of $57.19 and *a 9% discount* to Lilly's preliminary offer of $55 per share.

33.     Thus, it appears that ARMO is well-positioned for financial growth, and that the Tender Offer fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the 14D-9, discussed in detail

6
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

below, so that the Company's shareholders can properly assess the fairness of the Tender Offer for themselves and make an informed decision concerning whether to tender their shares.

## II.     The 14D-9 Omits Material Information

34.     On May 23, 2018, ARMO filed the 14D-9 with the SEC in support of the Tender Offer. As alleged below and elsewhere herein, the 14D-9 contains material misrepresentations and omissions of fact that must be cured to allow ARMO's stockholders to make an informed decision with respect to the Tender Offer. Specifically, the 14D-9 omits material information regarding: (i) certain of the Company's financial projections and generally accepted accounting principles ("GAAP") reconciliation of those projections; (ii) the valuation analyses performed by the Company's financial advisor in support of their respective fairness opinions; and (iii) the sale process leading up to the Tender Offer.

*The Company's Financial Forecasts*

35.     The 14D-9 discloses certain financial projections on pages 27-28, which were developed by the Company's senior management, relied upon the Board in recommending the Tender Offer, and utilized by Centerview in rendering its fairness opinions. 14D-9, 27-28. The 14D-9 also discloses that the financial projections "were not prepared with a view toward . . . compliance with . . . the guidelines established by the . . . U.S. generally accepted accounting principles." 14D-9, 27.

36.     However, the 14D-9 fails to disclose how each of these non-GAAP compliant financial metrics were calculated, the definition of each metric, the values of the underlying line items used in each metrics calculation, or a reconciliation of each metric to its most comparable GAAP equivalent and disclose the projected GAAP equivalent measure, e.g., net income. 14D-9, 27-28.

37.     The use of non-GAAP compliant financial measures, as was done here, is misleading. When a company discloses non-GAAP financial measures in a 14D-9 that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights

7

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

in a particular manner, the Company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

38.  Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as ARMO included in the 14D-9 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

39.  The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2]

---

[1]   Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2]   *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

40. Thus, in order to bring the 14D-9 into compliance with Regulation G as well as cure the materially misleading nature of the financial projections under SEC Rule 14D-9 as a result of the omitted information on pages 27-28, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

41. At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such projections are necessary to make the non-GAAP projections included in the 14D-9 not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP projections as ARMO stockholders are cautioned:

> The information from the projections should be evaluated, if at all, in conjunction with the historical financial statements and other information regarding ARMO contained in ARMO's public filings with the SEC.

14D-9, 27.

42. Clearly, shareholders would find the aforementioned information material since the Board's unanimous recommendation that shareholders tender their shares in connection with the Tender Offer was based in part on the following:

> ARMO's Financial Condition and Prospects. The ARMO Board considered the current and historical financial condition and results of operations of ARMO, as well as the strategic objectives and future prospects for ARMO if it were to remain an independent company. The ARMO Board reviewed ARMO's current financial operating plan, including the risks and uncertainties associated with executing upon and achieving the plan.

14D-9, 21.

*The Financial Advisor's Valuation Analyses and Fairness Opinion*

43. The financial projections at issue were relied upon by the Company's financial advisor, Centerview, in connection with its valuation analyses and fairness opinion. 14D-9, 29. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-

9
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

GAAP metrics differently. Once a registration statement discloses internal projections relied upon by the Board, those projections must be complete and accurate.

44. With respect to Centerview's *Discounted Cash Flow Analysis* ("DCF"), the 14D-9 discloses that Centerview estimated the implied present value of ARMO by calculating the present value of ARMO's "forecasted risk adjusted, after-tax unlevered free cash flows (excluding the impact of preclinical non-AM0010 pipeline R&D)" ("UFCF"), which Centerview generated utilizing the Company's internal financial projections. 14D-9, 33. However, the 14D-9 fails to disclose (i) the definition of UFCF; (ii) a reconciliation of UFCF to its most comparable GAAP compliant financial measure; or (iii) the line items used in its calculation.

45. Moreover, the 14D-9 discloses that Centerview also calculated the present values of ARMO's: "(iii) net present value of tax savings from usage of federal net operating losses and future losses and adding to the foregoing results, (iv) ARMO's estimated net cash balance as of June 30, 2018, as set forth in the Internal Data, and (v) the value of preclinical non-AM0010 pipeline based on the median pre-money valuation of a select set of pre-clinical / early-stage oncology companies in initial public offerings." 14D-9, 33. Notwithstanding Centerview's utilization of these financial projections in its DCF analysis, the 14D-9 fails to disclose their projected values, which are based on the financial projections developed by the Company's management. 14D-9, 33.

46. These key inputs are material to ARMO shareholders, and their omission renders the summary of Centerview's DCF valuation analysis incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id*. As Professor Davidoff explains:

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

47. Clearly, shareholders would find the aforementioned information material since the Board's unanimous recommendation that shareholders tender their shares in connection with the Tender Offer was based in part on the following:

> *Opinion of Centerview, Financial Advisor to ARMO.* The oral opinion of Centerview rendered to the ARMO Board on May 9, 2018, which was subsequently confirmed by delivery of a written opinion dated such date, that, as of such date and based upon and subject to the assumptions made, procedures followed, matters considered and qualifications and limitations upon the review undertaken by Centerview in preparing its opinion, the Offer Price to be paid to the holders of the Shares (other than as specified in such opinion) pursuant to the Merger Agreement was fair, from a financial point of view[.]

14D-9, 22-23.

***The Sale Process***

48. The 14D-9 discloses that the Company entered into non-disclosure agreements ("NDA") with Lilly and three other potential bidders, all of which "included customary standstill provisions." 14D-9, 15, 17. The 14D-9 also discloses that the standstill provision in Lilly's NDA terminated upon entering into the Merger Agreement despite this being largely irrelevant since they are party to the Merger Agreement. 14D-9, 5.

49. Despite disclosure about Lilly's immaterial NDA, the 14D-9 does not disclose whether the NDAs entered into with the three potential bidders contained "don't ask, don't waive" provisions, which would prevent them from making a public offer for the Company, nor does it disclose whether the standstill provisions terminated upon entry into the Merger Agreement. Clearly, ARMO shareholders would find this information material considering that the final Merger Consideration was 9% less than Lilly's initial indication.

11

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

50. Clearly, shareholders would find the aforementioned information material since the Board's unanimous recommendation that shareholders tender their shares in connection with the Tender Offer was based in part on the following:

> *Results of Process Conducted.* The ARMO Board considered the fact that ARMO had gone through a competitive process with multiple larger pharmaceutical companies in early 2018, including receipt of more than one indication of interest from Parent and Company A.

14D-9, 22.

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to ARMO's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the 14D-9, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that ARMO stockholders will suffer, absent judicial intervention, if ARMO's stockholders are required to decide whether or not to tender their shares without the above-referenced material misstatements and omissions being remedied.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934**

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

54. As discussed above, ARMO filed and delivered the 14D-9 to its stockholders, which Defendants knew contained , or recklessly disregarded, material omissions and misstatements described herein.

55. Defendants violated §14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the 14D-9 failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56. The 14D-9 was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

57. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the 14D-9, Defendants were aware of this information and their obligation to disclose this information in the 14D-9.

58. The omissions and misleading statements in the 14D-9 are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the 14D-9 as altering the "total mix" of information made available to stockholders.

59. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the 14D-9, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they

allowed it to be omitted from the 14D-9, rendering certain portions of the 14D-9 materially incomplete and therefore misleading.

60. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, and Plaintiff and ARMO stockholders will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Claims Against All Defendants for Violations of § 14(d)(4) of the**
**Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

61. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62. Defendants have caused the 14D-9 to be issued with the intention of soliciting stockholder support of the Tender Offer.

63. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

64. The 14D-9 violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the 14D-9 false and/or misleading.

65. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the 14D-9, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the 14D-9, rendering certain portions of the 14D-9 materially incomplete and therefore misleading.

66. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, and Plaintiff and ARMO stockholders will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**COUNT III**
**Against the Individual Defendants for**
**Violations of § 20(a) of the 1934 Act**

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants acted as controlling persons of ARMO within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of ARMO and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 14D-9, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

69. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The 14D-9 contains the unanimous recommendation of the Individual Defendants to approve the Tender Offer. They were thus directly involved in the making of the 14D-9.

71. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

72. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.  Enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Tender Offer, unless and until the Company discloses the material information discussed above, which has been omitted from the 14D-9;

C.  In the event Defendants consummate the Tender Offer, awarding damages to Plaintiff and the Class;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 24, 2018

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

James M. Wilson, Jr.
685 Third Avenue
New York, NY 10017
Tel: (212) 983-9330
Facsimile: (212) 983-9331
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Benjamin Heikali*
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: 424.256.2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Joanne Copp ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against ARMO Biosciences Inc. ("ARMO") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in ARMO securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 24th day of May, 2018.

_____
Joanne Copp

| Transaction<br>(Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 02/18/18 | 100 |
| | | |
| | | |
| | | |